UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Greenbelt Division)

▮▮▮▮▮▮▮▮ (J.A.), a minor

Johana Abrego, as Guardian of J.A.

11624 Gail Street
Silver Spring MD 20902

    Plaintiffs

    v.

Alex Miranda
Officer #2082

Travis Boggs
Officer #1595

Charles Lieblich
Officer #
Jamie Rohsner
Officer #2947

Rory Sugrue
Officer #2764

All c/o Montgomery County Police
Department
4th District Station
2300 Randolph Rd.
Wheaton, MD 20902

Montgomery County
c/o County Executive Isiah (Ike) Leggett
Executive Office Building
101 Monroe Street, 2nd Floor
Rockville, MD 20850

    Defendants.

Civil Action No. 16-cv-03953

**REDACTED COPY OF COMPLAINT**

I

## COMPLAINT

Plaintiffs J.A. and Johana Abrego hereby allege as follows:

## NATURE OF ACTION

1. This action arises under, *inter alia*, the Constitution of the United States of America ("Constitution"), 42 U.S.C. § 1983 ("1983").

2. As alleged in greater detail below, Montgomery County Police Officer Alex Miranda ("Officer Miranda") intentionally and maliciously assaulted and battered and unlawfully seized Plaintiff ▓▓▓▓▓▓▓ ("J.A."), a minor child, without probable cause at Plaintiffs' home in Silver Spring, Maryland in order to obstruct and in retaliation for J.A.'s recording of the arrest and resulting injuries to his brother Joseph Abrego.

3. Montgomery County Police Officers Miranda, Charles Lieblich ("Officer Lieblich"), Rory Sugrue ("Officer Sugrue"), Jamie Rohsner ("Officer Rohsner"), and Travis Boggs ("Officer Boggs") (collectively "Defendant Officers") in further obstruction of and retaliation for J.A.'s recording then intentionally and maliciously assaulted and battered and used excessive force in unlawfully seizing and arresting J.A. without probable cause, slamming him to the ground and kicking him in the face while he lay handcuffed on the ground. Defendant Officers caused significant injuries to J.A., including damage to his face, mouth and teeth and visible bleeding from his mouth. Despite J.A.'s significant and visible injuries, Defendant Officers did not call for medical attention, nor allow J.A. to sit up in order to clear the blood from his mouth. Instead, Defendant Officers questioned J.A. while he lay handcuffed and visibly suffering from injury, then arrested him and transported him to the Montgomery County Police Department ("MCPD") 4th District Station at 2300 Randolph Rd., Silver Spring, MD

20902 for processing. As a result of the above, J.A. has suffered serious and ongoing physical and psychological injuries.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## PARTIES

6. Plaintiff Johana Abrego ("Ms. Abrego"), the mother of Plaintiff, minor J.A., brings this suit on behalf of J.A.

7. Ms. Abrego and J.A. live together at 11624 Gail Street, Silver Spring MD 20902, which is located in Montgomery County and lived there during all times relevant to the facts alleged herein (the "Abrego Residence").

8. Defendant Officers, whom Plaintiff sues in their individual capacities, are officers of the MCPD.

9. At all times relevant herein, Defendant Officers acted under color of Maryland law and, in whole or in part, in their capacities as agents and employees of the Montgomery County Police Department.

## FACTS

10. On June 17, 2015, at approximately 11:30 p.m., Ms. Abrego called 911 to report an alleged burglary involving her adult son, Joseph Abrego.

11. On information and belief, Defendant Officers were soon thereafter dispatched to the Abrego Residence to investigate.

12. This was not the first time officers from the MCPD had been dispatched to the Abrego Residence for incidents involving Joseph Abrego.

13. Some or all of Defendant Officers had been called to the Abrego Residence one or more times prior to June 17, 2015.

14. All prior instances in which some or all Defendant Officers had been called to the Abrego Residence involved Ms. Abrego's older son, Joseph Abrego.

15. Based on at least these previous dispatches to the Abrego Residence, one or more Defendant Officers were familiar with the Abrego family.

16. One or more Defendant Officers were familiar with Joseph Abrego.

17. One or more Defendant Officers were familiar with Ms. Abrego.

18. One or more Defendant Officers were familiar with J.A.

19. When dispatched to the Abrego Residence on June 17, 2015, Defendant Officers knew that Joseph Abrego was the suspect of the alleged offense for which they had been dispatched.

20. On June 17, 2015, one or more Defendant Officers knew that Ms. Abrego was a resident of the Abrego Residence.

21. On June 17, 2015, one or more Defendant Officers knew that J.A. was a resident of the Abrego Residence.

22. At or around 11:45 p.m. on June 17, 2015, Defendant Officers arrived at the Abrego Residence.

23. Shortly after arriving, some or all Defendant Officers entered the Abrego Residence where they encountered Ms. Abrego, Joseph Abrego and J.A. in the residence.

24. Upon Defendant Officers' entry into the Abrego Residence, Ms. Abrego was located in the living room of the Abrego Residence.

25. Upon Defendant Officers' entry into the Abrego Residence, Joseph Abrego was located in the basement of the Abrego Residence.

26. Upon Defendant Officers' entry into the Abrego Residence, J.A. was located in the basement of the Abrego Residence.

27. Joseph Abrego entered the kitchen of the Abrego Residence, from the basement, after the Defendant Officers' entry into the Abrego Residence.

28. Separately from Joseph Abrego, J.A. entered the living room of the Abrego Residence from the basement, after the Defendants Officers' entry into the Abrego Residence.

29. J.A. was sixteen (16) years old on June 17, 2015.

30. J.A. did not possess a weapon when Defendant Officers entered the Abrego Residence on June 17, 2015.

31. J.A. did not threaten Defendant Officers upon the Defendant Officers' entering the Abrego Residence on June 17, 2015.

32. After entering the Abrego Residence, Defendant Officers walked past J.A. to confront Joseph Abrego.

33. One or more Defendant Officers arrested Joseph Abrego in the kitchen of the Abrego Residence.

34. Joseph Abrego sustained cuts to the right side of his face, and bruising, as a result of his arrest.

35. J.A. witnessed Joseph Abrego's arrest from the living room.

36. At no point did J.A. leave the living room to prevent or otherwise interfere with the process of Joseph Abrego's arrest.

37. From the living room, J.A. video recorded on his mobile phone portions of Joseph Abrego's arrest in the kitchen.

38. Multiple Defendant Officers were in the kitchen as J.A. began filming the arrest in the kitchen on his camera phone.

39. While J.A. was filming, two or more Defendant Officers, including Officer Miranda, escorted Joseph Abrego in handcuffs out of the house through the living room.

40. At the time Defendant Officers entered the living room with Joseph Abrego in handcuffs, J.A. was standing in front of a couch.

41. J.A.'s videotaping posed no reasonable threat to Defendant Officers or any other person in the Abrego Residence.

42. At no time did J.A. interfere with or otherwise impede the Defendant Officers' activity within the Abrego Residence.

43. Without justification or otherwise any valid basis, Officer Miranda shoved J.A. as he passed J.A.

44. Upon information and belief, Officer Miranda shoved J.A. in order to obstruct or retaliate for J.A.'s recording of Joseph Abrego's arrest and/or injuries.

45. As a result of Officer Miranda's shove, J.A. fell onto the couch into a seated position and lost control of the camera phone, preventing J.A. from getting a clear shot of Joseph Abrego's injuries.

46. J.A. was approximately five feet, five inches tall and weighed approximately 130 pounds on June 17, 2015.

47. On information and belief, on June 17, 2015, Officer Miranda was taller than (approximately five feet, seven inches tall) and significantly heavier than (approximately 190 pounds) J.A.

48. Officer Miranda then stood in front of J.A. and grabbed J.A.'s arms, pinning J.A. into a seated position on the couch.

49. J.A. was thus subdued by Officer Miranda and continued to pose no reasonable threat to Officer Miranda, Defendant Officers or any other person in the Abrego Residence.

50. Without justification, one or more Defendant Officers continued to physically batter J.A.

51. Upon information and belief, Defendant Officers' continued to physically batter J.A. in order to further obstruct and/or retaliate for J.A. recording of Joseph Abrego's arrest and/or injuries.

52. Approximately five seconds after Officer Miranda had subdued J.A., one or more Defendant Officers grabbed J.A. from the couch and tackled J.A., slamming him to the ground.

53. Upon being slammed to the ground, J.A.'s mouth never made contact with the ground; his body bore the brunt of the force and the side of J.A.'s head made contact with the ground.

54. Upon being slammed to the ground, J.A.'s hands fell on each side of his body.

55. After J.A. was slammed to the ground, one of the Defendant Officers handcuffed J.A.'s hands behind his back.

56. Upon information and belief, it was Officer Boggs who placed the handcuffs on J.A.

57. About ten (10) seconds after being slammed to the ground and handcuffed, J.A. was kicked in the face and/or mouth by one of Defendant Officers.

58. J.A. suffered significant injuries, including immediately visible physical injuries, from being kicked in the mouth by one of the Defendant Officers.

59. Despite J.A.'s significant visible injuries, Defendant Officers did not call for medical care.

60. Despite J.A.'s significant visible injuries, Defendant Officers did not allow J.A. to sit up in order to clear the blood from his mouth.

61. Defendant Officers did not question J.A. about the alleged burglary by Joseph Abrego.

62. Instead of allowing J.A. to seek immediate medical attention, Defendant Officers questioned J.A., arrested him, placed J.A. in the back of a police vehicle and transported him to the MCPD 4th District Station at 2300 Randolph Rd., Silver Spring, MD 20902 for processing.

63. Prior to placing J.A. into the police car for transport to the 4th District Station, one or more of Defendant Officers placed a bag over J.A.'s head and zip-tied it in place around his neck.

64. While riding in the police vehicle, J.A. felt exhausted and experienced difficulty breathing due to the bag over his head, which was tied tightly around his neck and also prevented him from clearing blood out of his mouth.

65. J.A. was forced to remain in custody until around 2:15 a.m. on June 18, 2015, at which point he was released to Ms. Abrego.

66. The experience of being slammed to the ground, kicked in the mouth and forced to wear a bag over his head humiliated J.A.

67. Upon information and belief, Defendant Officers charged J.A. with multiple criminal violations as a pretext to cover up for the excessive force they used to subdue, humiliate and injure J.A.

68. J.A. was charged with Obstructing and Hindering in violation of CR 9-408 and two counts of 2nd Degree Assault in violation of CR 3-203.

69. The charges against J.A. were dropped on or about July 28, 2015.

70. Subsequent medical evaluation further revealed the number and extent of J.A.'s physical injuries resulting from one or more of Defendant Officers assaulting and battering J.A.

71. As a direct result of one of the Defendant Officers kicking J.A. in the mouth, J.A. suffered at least two broken teeth and at least four additional loose teeth.

72. As a direct result of one of the Defendant Officers kicking J.A. in the mouth, J.A. suffered a lacerated lip.

73. As a direct result of one of the Defendant Officers kicking J.A. in the mouth, J.A. suffered a concussion and laceration to the back of his head.

74. As a direct result of one or more of the Defendant Officers' disproportionate use of force against J.A., J.A. suffered bruising on his neck and wrists.

75. J.A. required significant dental work to partially repair multiple teeth broken by one of the Defendant Officers kicking J.A. in the mouth.

76. J.A. also required the use of a retainer to stabilize multiple teeth loosened by one of the Defendant Officers kicking J.A. in the mouth.

77. J.A. requires significant additional dental work to complete the restoration of dental injuries sustained as a result of one of the Defendant Officers kicking J.A. in the mouth, but cannot afford the necessary procedures.

78. J.A. still experiences and will continue to experience oral pain and sensitivity as a result of the damage caused by one of the Defendant Officers kicking J.A. in the mouth.

79. As a result of the damage caused by the Defendant Officers, J.A. is at increased risk of tooth decay, resulting in the increased probability of need for further procedures such as, but not limited to, placement of crowns, root canals and tooth extraction.

80. Prior to Defendant Officers' assault and battery of J.A., J.A. had a promising soccer career, playing for an elite soccer club in showcases and tournaments across the country.

81. As a result of J.A.'s injuries, J.A. has had to cancel trips to compete in tournaments and showcases across the country and give up an opportunity to spend a post-graduate year playing soccer in Europe.

82. As a result of J.A.'s injuries, J.A. has been unable to pursue his soccer career.

83. As a direct result of Defendant Officers' conduct, J.A. suffered emotional damage and has suffered psychological injuries, including depression, since the attack.

84. As a direct result of J.A.'s physical and psychological injuries, J.A.'s grades have suffered, hurting his prospects to attend and/or play soccer in college.

85. The above-described acts of Defendant Officers were done knowingly, intentionally, maliciously, with evil motive, with deliberate and callous indifference to J.A.'s personal safety and constitutional rights, and/or with intent to injure J.A.

86. Defendant Officers' illegal conduct toward J.A. resulted from Montgomery County's policy, custom or practice of indifference to misconduct by MCPD officers. Defendant Officers' callous disregard for J.A.'s clearly established rights illustrates a lack of training and supervision requiring the police to follow the law and established departmental policies. This

deficiency is further underscored by the Department's failure to properly investigate Johana Abrego's Internal Affairs complaint regarding J.A. mistreatment.

87.     The written policy the Defendant Officers should have followed was directly on point. The MCPD policy on Citizen Videotaping interactions, FC No. 1142, dated January 1, 2013, provides in relevant part:

> *Individuals have a right to record police officers in the public discharge of their duties. The right to record is not limited to streets/sidewalks and includes areas where individuals have a legal right to be present. Examples of places where individuals have a legal right to be present include, but are not limited to: an individual's home, business, or any other property where the person has a right to be present.* * * * *

and

> *Officers are prohibited from threatening, intimidating, or otherwise discouraging any individual from recording police activities.* * * * *

88.     At the time of J.A.'s unlawful seizure, battery, and arrest, the official policies that the MCPD actually followed (as opposed to those written but ignored) allowed its officers to obstruct and prevent individuals from recording police officers in the public discharge of their duties, in violation of the First Amendment, as evidenced by the actions of Defendant Officers and the inadequate internal affairs investigation that resulted in no punishment or consequences for Defendant Officers and which effectively sanctioned and endorsed Defendant Officers' mistreatment of J.A.

89.     J.A.'s violent and harmful mistreatment by Defendant Officers was brought to the attention of the MCPD's Internal Affairs Division, which did nothing to correct the abuse or to discipline the officers involved.

90.     Johana Abrego filed a complaint with the MCPD's Internal Affairs Division ("IAD"), after which IAD conducted an internal investigation and found that Defendant Officers had not committed administrative violations.

91. The internal investigation was perfunctory and inadequate. Despite claiming to have "closely examined" "all pertinent information," IAD did not attempt to interview key witnesses or gather key pieces of information.

92. IAD did not attempt to interview two non-officer witnesses to the events: Joseph Abrego and another minor child that was also present.

93. IAD also did not request the video recording made by J.A., despite being told of its existence.

94. On information and belief, numerous recorded and unrecorded complaints of police interference and/or obstruction of citizen recording through intimidation or force show a pattern of unlawful conduct by MCPD officers.

95. At all times relevant to this complaint, Montgomery County has had a policy, custom and practice of failing to adequately train its officers on the clearly established First Amendment right of the public to record police officers in the public discharge of their duties.

96. At all times relevant to this complaint, Montgomery County has had a policy, custom and practice of failing to supervise and discipline officers who unlawfully obstruct and/or prevent members of the public from recording police officers in the public discharge of their duties, despite its awareness that these violations happen.

97. Repeated failure to supervise and discipline show Montgomery County's deliberate indifference to the First Amendment Rights of the public to record police officers in the public discharge of their duties.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Fourth and Fourteenth Amendments– 42 U.S.C. § 1983
### (Unreasonable Seizure)
### (Against Officer Miranda)

98. The preceding paragraphs 1 through 97 are incorporated herein by reference.

99. At all times relevant hereto, J.A. had a right clearly established under the Fourth Amendment to the U.S. Constitution, as incorporated against the states through the Fourteenth Amendment, to be free from unreasonable searches and seizures. This right encompasses the right to be free from unreasonable seizures.

100. The shove and subsequent pin of J.A. into a seated position by the much larger, standing, Officer Miranda constituted an unlawful seizure in violation of the Fourth Amendment.

101. A reasonable person in J.A.'s position would not feel that he or she was free to leave.

102. Officer Miranda effected the seizure without probable cause:

　　a. Officer Miranda knew that J.A. was not the suspect, Joseph Abrego.

　　b. Officer Miranda knew that J.A. had not committed and was not committing a crime; and

　　c. Officer Miranda knew that J.A. did not pose a threat to any person, including Ms. Abrego and any officers present, including Officer Miranda.

103. Officer Miranda acted with actual malice in the perpetration of the unreasonable seizure. There was no legal justification for the seizure; instead (on information and belief) Officer Miranda effected the seizure to obstruct or retaliate for J.A.'s recording of the arrest and resulting injuries of Joseph Abrego.

104. No reasonable officer with the same knowledge as Officer Miranda would believe that his or her actions were lawful.

105. Officer Miranda, who was acting under color of Maryland Law, violated J.A.'s rights under the Fourth Amendment to the U.S. Constitution and is liable for damages to J.A. under 42 U.S.C. § 1983.

106. Officer Miranda acted with evil motive or intent or reckless or callous indifference to J.A.'s federally protected rights.

107. As a direct result of Officer Miranda's conduct, J.A. has suffered economic and non-economic harm and is entitled to recover money damages including compensatory and punitive damages in an amount to be determined at trial.

**COUNT II**
**Violation of the Fourth and Fourteenth Amendment – 42 U.S.C. § 1983**
**(Use of Excessive Force in Arrest)**
**(Against Defendant Officers)**

108. The preceding paragraphs 1 through 107 are incorporated herein by reference.

109. At all times relevant hereto, J.A. had a right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment. This right encompasses the right to be free from the use of excessive force by law enforcement personnel during an arrest or any other seizure.

110. Defendant Officers, in the course of seizing J.A., used excessive force that was objectively unreasonable. This excessive use of force included, but was not limited to multiple officers tackling and slamming to the ground the already subdued and seated 130 pound sixteen year old J.A. and Defendant Officers kicking J.A.'s face while J.A. was lying handcuffed on the

ground.  The nearly-simultaneous injuries to the front and back of J.A.'s head are inconsistent with the reasonable use of force to effect the seizure.

111.    Defendant Officers acted with actual malice in the use of excessive force in perpetrating the arrest.  There was no legal justification or excuse for the excessive force; instead Defendant Officers acted to obstruct or retaliate for J.A.'s recording of the arrest and resulting injuries of Joseph Abrego, or otherwise could only have been spurred by an evil or rancorous motive and was aimed at deliberately and willfully injuring J.A.

112.    A reasonable officer with the same knowledge as Defendant Officers would not believe that his or her actions were lawful.

113.    Those Defendant Officers who may not have been directly involved, but who observed the use of excessive force are liable as bystanders.  These Defendant Officers were aware that their fellow officers were using excessive force, in violation of J.A.'s Fourth Amendment rights, had a reasonable opportunity to prevent the harm, yet chose not to act.

114.    Defendant Officers' above-described acts, which were performed while acting under color of Maryland law, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

115.    Defendant Officers are liable to Plaintiff under 42 U.S.C. §1983.

116.    Defendant Officers acted with evil motive or intent or reckless or callous indifference to J.A.'s federally protected rights.

117.    As a direct result of Defendant Officers' conduct, J.A. has suffered economic and non-economic harm and is entitled to recover money damages including compensatory and punitive damages in an amount to be determined at trial.

## COUNT III
### Violation of the Fourth and Fourteenth Amendments – 42 U.S.C. § 1983
### (Unlawful Arrest)
### (Against Defendant Officers)

118.   The preceding paragraphs 1 through 117 are incorporated herein by reference.

119.   At all times relevant hereto, J.A. had a right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment. This right encompasses the right to be free from an arrest by the police without probable cause.

120.   By arresting J.A., Defendant Officers made an arrest in violation of J.A.'s rights because the arrest was carried out without probable cause:

   a. Defendant Officers knew that J.A. was not the burglary suspect, Joseph Abrego;

   b. Defendant Officers knew that J.A. had not committed and was not committing a crime; and

   c. Defendant Officers knew that J.A. did not pose a threat to any person, including Ms. Abrego and any officers present.

121.   A reasonable officer with the same knowledge as Defendant Officers would not believe that his or her actions were lawful.

122.   Those Defendant Officers who may not have been directly involved in the false arrest of J.A. but who observed the false arrest are liable as bystanders.  These Defendant Officers were aware that their fellow officers were effecting an arrest in violation of J.A.'s Fourth Amendment rights, had a reasonable opportunity to prevent the harm, and yet chose not to act.

123. Defendant Officers' above-described acts, which were performed while acting under color of Maryland law, violated J.A.'s rights under the Fourth Amendment to the United States Constitution.

124. Defendant Officers are liable to Plaintiff under 42 U.S.C. §1983.

125. Defendant Officers acted with evil motive or intent or reckless or callous indifference to J.A.'s federally protected rights.

126. As a direct result of Defendant Officers' conduct, J.A. has suffered economic and non-economic harm and is entitled to recover money damages including compensatory and punitive damages in an amount to be determined at trial.

**COUNT IV**
**Violation of the First Amendment – 42 U.S.C. § 1983**
**(Obstruction and Retaliation for First Amendment Recording)**
**(All Defendants)**

127. The preceding paragraphs 1 through 126 are incorporated herein by reference.

128. At all times relevant hereto, J.A. had a right to free speech under the First Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment,. This right encompasses the right to record police officers in the public discharge of their duties.

129. By obstructing J.A. from recording Joseph Abrego's injuries and assaulting, battering and arresting J.A. in retaliation for the recording, Defendant Officers and MCPD violated J.A.'s clearly established First Amendment rights.

130. A reasonable officer with the same knowledge as Defendant Officers would not believe that his or her actions were lawful.

131. Those Defendant Officers who may not have been directly involved in, but directly observed, the unlawful obstruction of J.A.'s recording or assault, battery and arrest in

retaliation of the recording are liable as bystanders. These Defendant Officers were aware that their fellow officers were engaged in unlawful conduct in the violation of J.A.'s First Amendment rights, had a reasonable opportunity to prevent the harm, and yet chose not to act.

132. Defendant Officers' and MCPD's above-described acts, which were performed while acting under color of Maryland law, violated J.A.'s rights under the First Amendment to the United States Constitution.

133. Defendant Officers acted with evil motive or intent or reckless or callous indifference to J.A.'s federally protected rights.

134. Defendants are liable to Plaintiff under 42 U.S.C. §1983.

135. As a direct result of Defendant Officers' and MCPD's conduct, J.A. has suffered economic and non-economic harm and is entitled to recover money damages including compensatory and punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Johana Abrego prays for judgment as follows:

a. An award of compensatory damages against Defendant Officers in an amount to be determined at trial;

b. An award of punitive damages against Defendants Officers in an amount to be determined at trial;

c. An award of Plaintiff's costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

d. Appropriate injunctive relief, including the implementation of training protocols to prevent and effectively discipline the conduct complained of herein; and

    e. An order granting such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

Dated: December 9, 2016          Respectfully submitted,

                                                /s/ Dennis A. Corkery_____
                                                Dennis A. Corkery (D. Md. Bar No. 19076)
                                                Leah M. Watson (D. Md. Bar No. 18718)
                                                WASHINGTON LAWYERS'
                                                COMMITTEE FOR CIVIL RIGHTS AND
                                                URBAN AFFAIRS
                                                11 Dupont Circle, Suite 400
                                                Washington, DC 20036
                                                Phone: (202) 319-1000
                                                Email: dennis_corkery@washlaw.org
                                                Email   leah_watson@washlaw.org

                                                *Counsel for Plaintiffs*