IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.A., A MINOR,
*et al.*,

    Plaintiff,

v.

ALEX MIRANDA,
*et al.*,

    Defendants.

Civil Action No. PX 16-3953

******

**MEMORANDUM OPINION**

Pending in this action brought pursuant to 42 U.S.C. § 1983 is a motion to dismiss filed by Defendants Alex Miranda, Travis Boggs, Charles Lieblich, and Rory Sugrue, and Montgomery County. *See* ECF No. 26. The issues are fully briefed, and a hearing was held on August 29, 2017. *See* ECF No. 40. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

**I.    BACKGROUND**[1]

On June 17, 2015, at approximately 11:30 p.m., Plaintiff Johana Abrego called 911 to report that her son, Jospeh Abrego ("Abrego"), was burglarizing her home in Silver Spring, Maryland. Ms. Abrego's other son, sixteen year old Plaintiff J.A., lived with his mother and was home at the time. Unredacted Compl., ECF No. 9-1 at 4. Officers Alex Miranda, Travis Boggs, Charles Lieblich, Rory Sugrue ("Defendant Officers") arrived around 11:45 p.m. and arrested Joseph Abrego. Joseph was injured during the arrest but is not a party to this suit. *Id.* at 4–5.

---

[1] The facts outlined here are taken from the complaint and are accepted as true.

While the officers were arresting Joseph, J.A. was in the living room video recording the incident on his cell phone. J.A. was unarmed and at no point did he threaten the Defendant Officers. *Id.* at 5–6. While Officer Miranda was walking Joseph out of the home in handcuffs, Miranda shoved J.A. who fell onto the couch and lost control of his cell phone. *Id.* at 6. Officer Miranda then grabbed J.A.'s arm and pinned him in a seated position on the couch. *Id.* at 6. Almost immediately thereafter, Officer Boggs wrestled J.A. to the ground and handcuffed him. Within several seconds, one or more of the officers hit and kicked J.A. in the face and/or mouth. *Id.* at 7. Because he was being beaten, J.A. could not specifically identify by name each particular Officer who kicked or punched him. *See* ECF No. 30 at 17. Defendant Officers then placed a bag over J.A.'s head and zip-tied the bag around his neck. The Defendant Officers then transported J.A. to the Montgomery County police station. ECF No. 9-1 at 8. On the way to the station, J.A. found it hard to breathe not only because of the bag over his head, but because blood continued to pool in his mouth from the beating he had received. *Id.*

That evening, the Officers charged J.A. with the criminal offenses of obstructing and hindering and two counts of second-degree assault. *Id.* at 9. The following morning, J.A. was released to his mother. Ten days later, all charges against J.A. were dropped. *Id.*

By preventing him from recording his brother's arrest, J.A. alleges that the Defendant Officers failed to follow a written Montgomery County Police Department ("MCPD") Policy on Citizen Videotaping interactions, FC No. 1142, dated January 1, 2013. *Id.* at 11. The Policy provides, in pertinent part:

> Individuals have a right to record police officers in the public discharge of their duties. The right to record is not limited to streets/sidewalks and includes areas where individuals have a legal right to be present. Examples of places where individuals have a legal right to be present include, but are not limited to: an individual's home, business, or any other property where the person has a right to be present.

*Id.* Ms. Abrego subsequently filed a complaint with the Montgomery County Police Department's Internal Affairs Division ("IAD") which prompted a brief internal investigation. J.A. characterizes the investigation has "perfunctory and inadequate." *Id.* at 12. Despite claiming to have closely examined all pertinent information, IAD did not attempt to interview key witnesses or gather key pieces of information. Specifically, IAD did not make any contact with two non-officer witnesses to the events: Joseph Abrego and another minor child who was also present. *Id.* IAD also did not request the video recording made by J.A., despite being told of its existence. Ultimately, IAD concluded that Defendants had committed no wrongdoing. *Id.* at 11. J.A. also alleges that the Defendant Officers' conduct stemmed from a Montgomery County Police Department pattern or practice of indifference toward individual's rights based upon "numerous recorded and unrecorded complaints of police interference and/or obstruction of citizen recording through intimidation or force." *Id.* at 12.

As a result of the beating, J.A. sustained at least two broken teeth, four loose teeth, a lacerated lip, a concussion, a cut to the back of his head, and bruising on his neck and wrists. *Id.* at 9. J.A. required significant dental work, some of which he is still unable to afford. *Id.* at 9–10. Due to his injuries, J.A. has not been able to play soccer and his grades have suffered, hurting his college prospects. *Id.* at 10. J.A. also sustained emotional and psychological injuries as a consequence of the beating. *Id.*

Johana Abrego thereafter filed the instant suit on behalf of her minor son, J.A. (hereinafter "Plaintiffs") against Alex Miranda, Travis Boggs, Charles Lieblich, Rory Sugrue, and Montgomery County, pursuant to 42 U.S.C. § 1983 for violations of J.A.'s constitutional rights.[2] Specifically, Count I alleges unreasonable seizure against Miranda only; Count II alleges

---

[2] At the August 29th hearing, counsel for J.A. clarified that while the Montgomery Police Department is mentioned in the Complaint, it is not a defendant in this case. Nor could it be. *See LaPier v. Prince George's Cnty., Md.*, No.

3

excessive force against all officers and Count III alleges unlawful arrest against all individual officers; Count IV alleges violations of J.A.'s First Amendment freedom of speech against all officers as well as Montgomery County. On January 30, 2017, Defendants moved to dismiss Counts II through V of the Complaint on several grounds. The Court will address each argument in turn.

## II. STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those

---

10-CV-2851 AW, 2011 WL 4501372, at *3 (D. Md. Sept. 27, 2011) (explaining that under Maryland law, police departments are agents of the county and therefore cannot be sued as a separate entity).

4

elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III. ANALYSIS

### A. Counts II and III

Defendant Officers challenge Plaintiffs' claims of excessive force and illegal arrest (Counts II and III) as insufficiently pled under Rule 8(a) because Plaintiffs fail to specifically identify which officers committed particularized acts that violated J.A.'s constitutional rights. ECF 26-1 at 6, 12–13. Defendants alternatively argue that the Complaint fails to sufficient aver bystander liability and must be dismissed on that ground. ECF No. 26-1 at 7. Neither argument is persuasive.

Group pleading is not ideal. Where it is possible to connect a particular defendant, or at least a subset of defendants, to specific acts of wrongdoing, a plaintiff must do so. *See Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *5 (N.D. Ill. Sept. 24, 2013). However, at the pleading stage, a plaintiff is not expected to possess complete knowledge of the defendant's alleged wrongful conduct, but need only submit facts sufficient to plead a plausible claim for relief. Indeed, the purpose of discovery is to establish the presence or absence of facts with which the plaintiff intends to prove his claim. *See Burgess v. Baltimore Police Dep't*, No. RDB-15-0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) (identifying "officer defendants" in complaint sufficient). "Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh*, 2013 WL 5348326, at *4. The key is to generally

identify those "persons responsible for the problem." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). And that is what the Plaintiffs did here.

This is especially so where the injured party was the alleged victim of a group beat down which, no doubt, severely disadvantaged him and any onlookers in identifying precisely which officers committed which bad acts. Indeed, where the identity of the purported bad actor is known with precision, the individual defendant is named. *See, e.g.*, ECF. No. 1 (Count I against Officer Miranda only). That the complaint does not specify by name those officers who specifically kicked J.A. in the face or put a bag over his head is hardly fatal. J.A., as the person experiencing the beating, would not plausibly be able to identify the officers with particularity. But at the same time, those officers at the scene are identified, thus placing them on sufficient notice of the claims and the nature of the alleged jointly undertaken group misconduct. *See Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) ("But reading the allegations sensibly and as a whole, there is no genuine uncertainty regarding who is responsible for what. Wherever the complaint mentions specific misconduct in Engel's investigation and prosecution . . . there can be no doubt that it refers to . . . the two law-enforcement officers involved in the case. And they are accused of acting jointly."). Because Plaintiffs have pleaded Counts II and III with sufficient particularity, the motion to dismiss is denied.

Defendant Officers alternatively argue that Plaintiffs have failed to plead sufficient allegations of bystander liability as to Counts II and III. Bystander liability requires a plaintiff to prove a law enforcement officer "'(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act.'" *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th Cir. 2014) (quoting

6

*Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). The Court finds that the complaint plausibly states a claim for relief on this theory.

As to the first element, the complaint alleges the presence of all Defendant officers when Miranda pinned J.A. into a seated position, Boggs cuffed him, and other officers slammed him to the ground and kicked him in the face. The complaint further alleges that J.A. had done nothing in provocation. Accordingly, the complaint sufficiently avers that Defendant Officers knew that Miranda, Boggs, and other officers were subjecting J.A. to excessive force.

Next, the complaint sufficiently alleges the second element—that Officers had a reasonable opportunity to prevent the harm—because it notes the passage of time throughout the encounter when each could have taken steps to protect J.A. *See* ECF No. 9-1 at 7–8 (pleading approximately five seconds passed between being subdued and tackled, and approximately ten seconds between being handcuffed and kicked); *see also Smith v. Aita*, No. CCB-14-3487, 2016 WL 3693713, at *4 (D. Md. July 12, 2016) *appeal filed*, No. 17-6783 (4th Cir. June 20, 2017) (finding bystander liability sufficiently pled with respect to Officers present during 10 to 20 second beating). By inference, therefore, Defendant officers indeed had time to prevent the ongoing violations.

Finally, the third element is satisfied because, as pleaded, nothing prevented the Defendant Officers from attempting to stop the harm to J.A. *See Stevenson*, 743 F.3d at 419. Defendants' motion to dismiss Counts II and III, is therefore, denied.

**B.     Count IV – First Amendment Violations against Defendant Officers**

As to Count IV, Defendant Officers argue that they are entitled to qualified immunity because as of June 17, 2015, a citizen's First Amendment right to record police activity had not been clearly established.  ECF No. 26-1 at 14. Government officials sued in their individual

capacities are entitled to the defense of qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry is two-fold. Courts must consider (1) whether the facts established by the plaintiff make out a violation of a federal right; and if so (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court must undertake this inquiry viewing the facts "in the light most favorable to the party asserting the injury." *Mansoor v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003) (citation and internal quotation marks omitted).

Although the Court may consider these twin prongs in the order which best suits the "circumstances in the particular case at hand," *Pearson*, 555 U.S. at 236, it is preferable to consider first whether the conduct at issue violated a constitutional right because such a determination advances the discourse as to whether the right is clearly established. *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 236.

If the Court determines that Defendants Officers' conduct violated a constitutional right, the Court must next turn to whether the right is clearly established, or whether "its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S.

8

635, 640 (1987)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

Whether a right is clearly established does not turn on whether a previous court had considered the identical factual predicate. That said, the previous case must be sufficiently similar so that "the unlawfulness [must be] apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances," as long as the law gave the defendant official "fair warning" that the conduct was unconstitutional. *Id.* at 740–41.

Furthermore, because the defense of qualified immunity turns on whether officers should have known that their conduct violated a constitutional right, the "clearly established" analysis must focus on the law in place at the time of the alleged misconduct. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (internal quotations and citation omitted). The court that is asked to determine qualified immunity need not look beyond published decisions of "the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). *See also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam).

Here, the complaint describes two ways in which Defendants violated J.A.'s First Amendment rights: (1) by thwarting his attempts to video record his brother's arrest and (2) by arresting and physically beating him in retaliation for exercising his First Amendment right to record his brother's arrest. ECF No. 9-1 at 17–18. Defendants, relying on *Garcia v. Montgomery Cnty., Maryland*, 145 F. Supp. 3d 492, 498 (D. Md. 2015), focus almost exclusively on the question of whether the right to record police activity was clearly established as of June 17, 2015. In *Garcia*, a journalist filed suit against Montgomery County police officers, claiming

9

violation of his First Amendment rights in connection with his arrest for videotaping the police. *Id.* at 498–99. In an exhaustive analysis, the *Garcia* Court relied on "two lines of Supreme Court precedent, read together," to establish that "that journalists and citizens alike have such a [First Amendment] right." *Garcia*, 145 F. Supp. 3d at 506–07 (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) and *Mills v. Alabama*, 384 U.S. 214, 218 (1966). "Significant to that right," the *Garcia* Court noted, "are the aims of 'preventing corruption and sustaining the active alert responsibility of the individual citizen in a democracy for the wise conduct of government.'" *Id.* (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 788–89 (1978)). Thus, the *Garcia* court held that video recording police conduct is squarely protected by the First Amendment. This Court agrees and finds that J.A. has adequately pleaded that the Defendant Officers violated that right when they engaged in the acts against J.A. described above.

The *Garcia* Court also rightfully noted that the majority of circuits have found First Amendment protection in a citizen's right to videotape police conduct. *See Garcia*, 145 F. Supp. 3d at 507 (citing *Gericke v. Begin*, 753 F.3d 1, 7–8 (1st Cir. 2014) (holding that an arrest of a citizen for illegal wiretapping when she recorded a traffic stop without interfering with the police activity violated her First Amendment rights); *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) (finding "[a]udio recording is entitled to First Amendment protection," and such protection includes "prohibit[ing] government from limiting the stock of information from which members of the public may draw."); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (holding that plaintiffs "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); *see also Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir.1995) (recognizing a "First

Amendment right to film matters of public interest" in a case where police officers interfered with a citizen seeking to film a public demonstration directed in part against the police)).

Since *Garcia*, the Fifth and Third Circuits have joined their sister Circuits in holding that "there is a First Amendment right to record police activity in public," albeit with appropriate time, place and manner restrictions. *Fields v. City of Philadelphia*, 862 F.3d 353, 355–56 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689–90 (5th Cir. 2017). In so doing, both Circuits emphasized that "[a]ccess to information regarding public police activity is particularly important because it leads to citizen discourse on public issues, 'the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.'" *Fields*, 862 F.3d at 358 (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). *See also Turner*, 848 F.3d at 689 ("Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs.") (quoting *Gilk v. Cuniffe*, 655 F.3d 78, 82–83 (1st Cir. 2011)).

Even though this Court, following the collective wisdom of her colleague and sister Circuits, finds that J.A.'s conduct protected under the First Amendment and the Defendant Officers violated that right, it was not yet clearly established in this Circuit at the time of the alleged violation. Unlike the majority of other Circuits, the Fourth Circuit has not yet authored a published opinion announcing its view on the contours of the First Amendment right as applied to filming police conduct. The closest the Fourth Circuit has come is *Szymecki v. Houck*, 353 F. App'x 852 (4th Cir. 2009) where it affirmed, in an unpublished opinion, the district court's determination that the "asserted First Amendment right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct." *Id.* at 853. If anything, *Symecki* underscores that this First Amendment right is *not* clearly established by

expressly reaching that very conclusion in an unpublished opinion. And since *Garcia,* the jurisprudence from the Supreme Court and the Maryland Court of Appeals on this issue has remained unchanged. As a result, this Court is constrained to find that at the time of the alleged misconduct, a citizen's First Amendment right to video record the police was not clearly established. Defendant Officers are entitled to qualified immunity as to Count IV which must therefore be dismissed as these Defendants.

C.      **Count IV – First Amendment Violations against Montgomery County (*Monell* Claim)**

The Court's analysis of qualified immunity does not settle Plaintiffs' First Amendment claim against the County because qualified immunity does not extend to municipalities. *See Owen v. City of Independence*, 445 U.S. 622, 657 (1980) ("municipalities have no immunity from damages liability flowing from their constitutional violations."). This is particularly the case where qualified immunity is granted because the rights violated were not clearly established. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 238 (6th Cir. 1992) ("Stated another way, it is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions.").

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court determined that local governmental bodies may be held liable under § 1983 based on the unconstitutional actions of its individual agents or employees only where they acted pursuant to an official policy or custom of the local government that resulted in a violation of the plaintiff's rights. 436 U.S. 658, 690–91 (1978); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Accordingly, plaintiffs seeking to impose § 1983 liability on a municipality must

"adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The policy or custom may be "an express policy, such as a written ordinance or regulation;" a decision by "a person with final policymaking authority;" "an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens;" or "a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

To state a *Monell* claim, a plaintiff must allege that "'(1) the municipality [had] actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there [was] a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage.'" *Rockwell v. Mayor & City Council of Baltimore*, No. RDB-13-3049, 2014 WL 949859, at *11 (D. Md. Mar. 11, 2014) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted)). The plaintiff also must allege that there was "a 'direct causal link' between the policy or custom and the deprivation of rights." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386–86 (1989)). Additionally, "'there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice,'" because "[a] municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees.'" *Smith v. Ray*, 409 F. App'x. 641, 651 (4th Cir. 2011) (quoting *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003)).

Here, Plaintiff alleges that the Defendants Officers' illegal conduct toward him "resulted from Montgomery County's policy, custom or practice of indifference to misconduct by MCPD

officers" and that the Officers' treatment of him "illustrates a lack of training and supervision requiring the police to follow the law and established departmental policies." ECF No. 9-1 at 10. Plaintiffs further allege that despite a written MCPD Citizen Videotaping Policy which states that "[i]ndividuals have a right to record police officers in the public discharge of their duties," "the official policies that MCPD actually followed . . . allowed its officers to obstruct and prevent individuals from recording police officers," as evidenced by the inadequate internal affairs investigation "that resulted in no punishment or consequences for Defendant Officers and which effectively sanctioned and endorsed Defendant Officers' mistreatment of J.A." *Id.* at 11.

Defendants argue that Plaintiffs' allegations do not state a *Monell* claim because the Complaint focuses only on J.A.'s incident without sufficient factual basis to support more widespread interference with video recording of police conduct. *See* ECF No. 26-1 at 25–29. On this point *Garcia* is again instructive. Before the parties in *Garcia* filed cross-motions for summary judgment, the defendants moved to dismiss Garcia's *Monell* claim arguing that "Mr. Garcia's complaint mentions only his incident and . . . he has pled nothing more than an isolated constitutional deprivation . . . ." *Garcia v. Montgomery Cty., Md.*, No. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013). The *Garcia* court allowed the *Monell* claim to proceed based on an almost identical factual scenario as in this case. Relying on the Fourth Circuit's decision in *Jordan by Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994), the Court reasoned:

> Mr. Garcia has stated a valid *Monell* claim. Contrary to the defendants' assertion that Mr. Garcia's complaint mentions only his incident and that he has pled nothing more than an isolated constitutional deprivation, the complaint alleges that Montgomery County was aware of unconstitutional actions by [MCP] officers directed towards members of the media but chose to ignore such behavior. The Fourth Circuit has made clear that a *Monell* plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339–40 (4th Cir.1994) (citations omitted).

*Garcia*, 2013 WL 4539394, at *5. The Court concluded that "[a]t this stage, it is enough that Mr. Garcia has alleged that Montgomery County was aware of ongoing constitutional violations by MCPD officers and that the county's failure to supervise and discipline its officers allowed a pattern and/or practice of unconstitutional actions to develop." It added:

> Under *Twombly* and *Iqbal*, the factual allegations in the complaint are sufficient to survive a motion to dismiss as they are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Jordan*, 15 F.3d at 338 (stating that "section 1983 claims are not subject to a 'heightened pleading standard' paralleling the rigors of proof demanded on the merits") (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

*Id.*

Similarly here, Plaintiffs allege that Montgomery County's custom or practice violated citizens' constitutional rights to video record police conduct by failing to supervise or discipline offending officers, and conducting inadequate investigations into the same. Plaintiffs specifically point to IAD's cursory investigation of his complaint where the County took no action against officers who clearly violated their own written policy on filming police conduct. This, coupled with Plaintiffs' averment of other similar constitutional violations, is sufficient for the claim against the County to survive at this stage. Therefore, the Court denies the Defendants' motion as to Count IV with respect to Montgomery County. For this reason, the Court will not dismiss Plaintiffs' request for injunctive relief against the County.[3]

## D.    Punitive Damages

Defendants next challenge the availability of punitive damages. At the August 29, 2017 hearing, counsel for J.A. clarified that Plaintiffs are not pursuing punitive damages against

---

[3] Defendants seek dismissal of Plaintiffs' request for injunctive relief only to the extent the County is dismissed from the case. *See* ECF No. 26-1 at 29. Plaintiffs do not dispute that injunctive relief is unavailable against the individual officers. *See* ECF No. 30 at 40 n.6.

Montgomery County. As to the Defendant Officers, punitive damages may be awarded in § 1983 actions where the punishable conduct involves "'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir.1987) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiffs have averred facts from which a reasonable jury could conclude that Defendant Officers acted with reckless disregard towards J.A.'s rights and elect to award punitive damages. The motion to dismiss as to the individual Defendant Officers is, therefore, denied.

## IV. CONCLUSION

Defendants' Motion to Dismiss is denied as to Counts II and III. It is also granted as to Count IV with respect to the Defendant Officers but denied with respect to the County. The motion is also denied as to punitive damages against the individual Defendants. The motion as to injunctive relief is denied. A separate Order follows.

| | |
|---|---|
| 9/1/2017 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |